UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLIE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 1929 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| AIM SPECIALTY HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Kellie Wilson, a Black employee of AIM Specialty Health ("AIM"),[1] brings race

discrimination claims against AIM under Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e *et seq*., the Illinois Human Rights Act ("IHRA"), 775 Ill. Stat. Comp. 5/1–101

*et seq*., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[2]  Wilson alleges that AIM

compensated her less than her non-Black coworkers and failed to promote her due to her race.

AIM now moves for summary judgment on all of Wilson's claims, arguing that several of them

are time-barred and that the remainder fail because no reasonable jury could find in her favor.

Wilson contends that some of her claims are timely and that disputes of material fact exist that

preclude summary judgment.[3]  Because AIM is correct about both the timeliness and the merits

---

[1] AIM has since rebranded as Carelon Insights, but because all relevant events occurred prior to the name change the Court refers to the party as AIM.

[2] Courts "generally use the same standard to review discrimination . . . claims" brought under Title VII, the IHRA, and § 1981.  *Baines v. Walgreen Co.*, 868 F.3d 656, 661 (7th Cir. 2017) (Title VII and § 1981 analyzed under the same framework); *see Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) ("Illinois courts apply the federal Title VII framework to IHRA claims.").  Accordingly, the Court will discuss the merits of Wilson's specific claims rather than mechanically address the statutes under which she brings them.

[3] Wilson agreed that her claims related to a negative performance evaluation, denial of a pay increase and annual bonus, and performance improvement plan are not viable.  Doc. 77 at 8 n.4.  The Court, thus, grants judgment to AIM on these claims and will not address them further in this Opinion.

of Wilson's claims, the Court grants its motion for summary judgment.

**BACKGROUND[4]**

## I. The Parties

### A. Wilson

Wilson, a Black woman, is an Illinois resident. She earned an associate degree in applied science in electronics from DeVry Institute of Technology (now DeVry University) in 1998 and a bachelor's degree in technical management from the same school in 2003 or 2004. After completing her studies, Wilson worked at Venturi Technology Partners from August 2004 until April 2005 as a Quality Assurance Analyst III, earning an annual salary of $67,000. She then worked on a contract basis at Exelon from April 2005 through February 2006 as a Telecom Business Analyst, earning an annual salary of $80,000. After a four-month gap, Wilson worked at TekSystems, an AT&T company, from June 2006 until October 2006 as a Senior Network Control Engineer, earning an annual salary of $75,000.[5] Then, from October 2006 until January 2007, Wilson worked as a Senior Business Analyst at Manpower, earning $68,000 per year. But Wilson shortly thereafter found a better opportunity and went to work at AQS Inc. as a Business Analyst II earning $65,000 from January 2007 until the company laid her off in May 2008. Wilson remained unemployed until September 2008, when she found a position at KForce through December 2008 as a short-term contract Business Systems Analyst earning $72,000 per year. After Wilson's contract ended in December 2008, she experienced a two-and-a-half year period of unemployment, during which she filled her time as a church volunteer with a focus on

---

[4] The Court takes the facts in the background section from the parties' submissions and exhibits attached thereto, and construes them in the light most favorable to Wilson. *See Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).

[5] This position was supposed to last for two years, but TekSystems moved from Wisconsin and Wilson declined to follow the company and sought new employment in Wisconsin.

fulfilling her congregation's IT needs. Wilson started working for AIM as a Business Analyst ("BA") in June 2011 through a contracting firm, Indecon Solutions, earning a salary of $60,000.

### B.    AIM

AIM is a medical benefits management company that helps manage patient care across a variety of healthcare specialties. *See* Carelon Insights, *Medical benefits management* (last accessed Nov. 8, 2023), https://www.careloninsights.com/medical-benefits-management. AIM is a subsidiary of Anthem, Inc. ("Anthem"),[6] which is a publicly traded health insurance company. Anthem sets several policies governing AIM's employment practices. One policy is AIM's equal opportunity employment policy, which prohibits discrimination of any sort—including hiring, compensating, and promoting employees—based on a person's protected class, such as race. Another policy is AIM's Equal Employment Opportunity and Affirmative Action policy, which provides AIM employees various options to report discrimination they experience within the company.

Anthem has a policy that governs how AIM compensates new employees. Anthem sets salary ranges for each position within AIM based on the prevailing market for employees working similar positions at other firms. Anthem constructs these ranges by collecting data based on factors like the job description and overtime eligibility, which it uses to create a job grade. Anthem then uses third-party consultants to conduct market salary surveys based on these job grades. It uses the survey results to prepare compensation bands. The ranges Anthem creates consist of a midpoint salary, and low and high endpoints set at 80% and 120% of the midpoint, respectively. Although AIM must set starting salaries within the prescribed range, managers can advocate for new hires to be paid at the higher (or lower) end depending on factors

---

[6] Although Anthem recently rebranded as Elevance Health, Inc., in June 2022, the Court refers to the company by its previous name throughout this Opinion.

such as the candidate's experience and expected salary. Managers review new hire salary recommendations to ensure fair compensation across teams. Ultimately, AIM's human resources department determines the salary a new employee receives.

Once AIM sets an employee's starting compensation, corporate policy dictates that the employee does not receive guaranteed salary increases or annual merit bonuses. Nor do employees receive raises on any sort of tenure-based plan. Instead, annual raises are left to a modified version of managerial discretion, whereby managers grant raises set within bands AIM specifies based on several indicia of performance. Managers consider various factors when deciding the size of an employee's raise including relative performance to coworkers, future potential, whether the employee demonstrated initiative by taking on additional or special projects, and where an employee's pay falls within the proscribed salary range for their position and how it compares to their colleagues' salaries. Once a manager decides how much an employee should receive, the manager's superiors review the decision before ratifying it. Managers cannot withhold an employee's raise if AIM indicates the employee should receive one. However, AIM will not recommend that an employee receive a merit raise if she already earns 100% of the midpoint salary range and fails to fully meet her manager's expectations.

AIM categorizes some of its employees by job group. One such group includes AIM's BAs, who receive one of four titles depending on the level of responsibility they hold—BA I, BA II, BA III, or Business Consultant. BA Is are entry-level BAs. BA IIs generally have three to five years of equivalent experience before AIM hires or promotes them, and BA IIIs typically must have five to seven years of experience to be eligible for the role. AIM fills its BA ranks both by promoting employees holding lower BA positions and by hiring externally. For example, AIM promoted Drisia Narayanan, an ethnic Indian woman, from BA II to BA III in

4

2015, and externally hired Joneasha Snow, a Black/Mixed Race woman, and Nina Sriram, an ethnic Indian woman, as BA IIIs in 2015 and 2016, respectively. AIM does not invite current BAs to apply for a promotion to the next level, nor does it inform them when such an opening exists or if they are considered for a promotion. In fact, career progression is often—but not always—employee-driven. Most typically, BAs will initiate promotion conversations with their manager, either by directly asking for a promotion or inquiring about what steps they must take to earn one. But sometimes managers initiate these conversations, or an employee will receive a promotion without any notice from management at all. AIM will not consider BAs who need significant improvement in various areas of their work for promotion, spontaneous or otherwise.

## II.    Wilson's Employment at AIM

On August 31, 2012, Wilson became a full-time, permanent BA II with AIM after her direct supervisor, Lori Hess, a white woman, decided to offer her the role. Wilson's starting salary was $66,000, a 10% increase over her contract rate. Wilson testified that she spoke with Hess about her career progression a few months after she commenced her permanent role in "2012 and a piece of early 2013." Doc. 74-15 at 122:15. In 2013, Wilson briefly became a member of the Client Implementation Team ("CIT") to avoid AIM's layoffs before transferring back to the BA team. Hess noted that Wilson's performance deteriorated after her time on the CIT. In November 2014, Wilson began reporting to Stefanie Opasinski, a white woman, who observed that Wilson exhibited middling performance. Wilson testified that she believes AIM should have promoted her to BA III sometime during this period, either in 2014 or 2015. But after she did not receive such a promotion, Wilson discussed with Opasinski the prospect of becoming a strategy officer, which is not a role in the BA team or a promotion from the BA II

level, in 2016 or 2017.  Then, still a BA II, Wilson began reporting to Snow in late 2019.  On Snow's recommendation, AIM promoted Wilson to BA III on December 7, 2020.

Wilson received merit-based salary raises for all but one of the years she was a BA II.  In March 2013, Wilson's salary increased by 2% to $67,320.  By March 2017, after another four consecutive years of salary increases ranging from 1.1% to 3%, Wilson was earning $73,292.43.  The next year, in March 2018, she received another 2% raise, increasing her salary to $74,758.32.  Wilson did not receive a merit increase in 2019 because AIM determined that she was earning 100% of the midpoint salary range and failed to satisfy Opasinski's expectations.  But Wilson once again received a raise in 2020 to $76,253.44, before AIM promoted her to BA III in December 2020 and increased her salary to $83,878.78.

## III.    Other AIM Employees

Opasinski supervised several other BA IIs aside from Wilson.  Kimberly Louis, a white woman, began working for AIM as a contractor at the BA III level between November 2016 and May 2017.  In this role, Louis earned an annual salary of $77,000.  AIM hired Louis as a full-time BA II in May 2017 at a starting salary of $75,000, a $2,000 pay cut.  AIM hired Louis to be a BA II rather than a BA III because Opasinski felt that Louis lacked certain abilities and experiences, such as writing a SQL script and working with architecture.  But based on Louis' three-and-a-half years of experience in a BA I equivalent job elsewhere and her six months as a BA III, combined with Opasinski's positive assessment of Louis' work at AIM, Opasinski felt that she could justify a salary higher than the BA II's midpoint salary.  Although Opasinski identified Louis as one of her bottom three performers in June 2017 (a month after Louis started full-time), Louis received a promotion to BA III in October 2017 due to her increased duties, quick learning abilities, and strong work performance.  Louis' salary increased to $82,500 after

this promotion. The next year, in July 2018, AIM promoted Louis again to the Business Consultant role.

Kenneth Thomas, whose race the parties do not discuss, was also a BA II under Opasinski's supervision. AIM hired Thomas in March 2019 at an annual salary of $80,000. According to his application to AIM, Thomas has a master's of business administration in finance from Christ University in Bangalore, India, and a master's of science in business finance from Virginia Commonwealth University in Richmond, Virginia. He was also working toward receiving his master's of science in information technology management from Campbellsville University in Campbellsville, Kentucky when he applied. Thomas worked as a Business Analyst for Suvidha Realtors and Constructions Pvt. Ltd. in Hubbali, India from April 2011 until May 2015; as a Business Analyst – IT trainee for Coolsoft LLC in Louisville, Kentucky from July 2017 until September 2017, and then as a Business/Systems Analyst at Genius Minds LLC in Tacoma, Washington from September 2017 until he started working for AIM in March 2019. Thomas filled the gaps in his employment history with his advanced degree studies.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed.*

*Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle*, 719 F.3d at 842. However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I.  Statute of Limitations

AIM argues that Wilson's claims are untimely to the extent she seeks recovery for events that occurred before April 12, 2017[7]—four years before she filed suit.[8]  *See* 28 U.S.C. § 1658;

---

[7] AIM asked the Court to limit Wilson's claims to those arising after April 21, 2017, *see* Doc. 73 at 4, which appears to be a transposition of the correct date before which § 1981's statute of limitations would bar her claims, *see* Doc. 1 (filed on April 12, 2021).

[8] Title VII and IHRA claims are subject to a shorter statute of limitations. *See* 42 U.S.C. § 2000e-5(e)(1); *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). But because Wilson brings her case under, *inter alia*, § 1981, she would be able to recover for events that might otherwise be time-barred under Title VII and the IHRA. Thus, the Court only discusses § 1981's broader four-year statute of limitations.

*see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (applying § 1658 four-year statute of limitations to § 1981 claims). Wilson disagrees, claiming that the Seventh Circuit's interpretation of the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), 42 U.S.C. § 2000(e)(3)(A), reinstated circuit precedent that allows her to obtain relief for her disparate pay claims going back to 2012, and that her failure to promote claims are timely because AIM's internal promotion system never provided her notice of any adverse promotion decisions.

### A.    Disparate Compensation

The Court limits Wilson's disparate compensation claims to those arising on or after April 12, 2017. Although Wilson is correct that the Fair Pay Act allows her to bring claims that would ordinarily be time-barred, she is incorrect that it affords her nearly a decade of leeway from the time she first filed suit. This is because each paycheck is considered a "discrete act[]" that "does not extend the time" an employee has to file her suit. *Pruitt* v. *City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006). This means that Wilson cannot use the continuing violation doctrine to save any claims she may have accrued in 2012 because the doctrine simply does not apply to discrete acts. *See Dandy v. UPS, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) ("[T]he continuing violation doctrine 'preclud[es] recovery for discrete acts of discrimination . . . that occur outside the statutory time period[.]'" (quoting *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 105 (2002))). Because Wilson brings her claim under § 1981 she may recover for claims going back four years. *See* 28 U.S.C. § 1658. Thus, Wilson's disparate compensation claims arising before April 12, 2017 are time-barred.

### B.    Failure to Promote

The Court also limits Wilson's failure to promote claims to those arising on or after April 12, 2017. Wilson again argues that the continuing violation doctrine saves all of her claims

because the manner that AIM promotes employees within job classes would never provide her

"reason to believe she was being discriminated against at any discrete moment in time." Doc. 77

at 6. True, a "violation of Title VII occurs, and triggers the time limit for filing a charge, when

the employee knew or should have known that he or she was discriminated against." *Stewart v.*

*CPC Int'l, Inc.*, 679 F.2d 117, 120 (7th Cir. 1982). But it is also the case that "[u]nder this

circuit's case law, a plaintiff awakens to the possibility of a Title VII claim far sooner than [s]he

achieves any level of certainty that [her] rights have been violated." *Beamon v. Marshall &*

*Ilsley Tr. Co.*, 411 F.3d 854, 861 (7th Cir. 2005). "If a plaintiff were entitled to have all the time

[s]he needed to be *certain* [her] rights had been violated, the statute of limitations would never

run—for even after judgment, there is no certainty." *Cada v. Baxter Healthcare Corp.*, 920 F.2d

446, 451 (7th Cir. 1990).

Although Wilson notes that AIM did not have a formal application process or issue

denials of promotions that would affirmatively confirm she did not receive any given promotion,

she nevertheless should have been "awake[] to the possibility of a Title VII claim" regarding her

lack of promotion to the BA III role as early as 2015. *Beamon*, 411 F.3d at 861. By then,

Wilson had been a BA II for approximately three years. According to Opasinski, a BA II could

expect to progress to the BA III position within two to four years of holding the BA II role. *See*

Doc. 74-12 at 25:15–23 (a BA II typically has "three to five years" experience and a BA III has

"five to seven years of experience"). So, when Wilson testified that she felt AIM should have

promoted her in "2014, 2015 for the next level," Doc. 74-15 at 141:17, she was correct that she

was squarely within the window of when she could have expected to receive a promotion. But

instead of AIM promoting Wilson to BA III, it chose to promote Narayanan instead and

externally hire Snow to the position. Not receiving a promotion she expected to earn should

10

have put Wilson on notice of her Title VII claim. *Cf. Wislocki-Goin v. Mears*, 831 F.2d 1374 (7th Cir. 1987) (limitations period begins when plaintiff learns of other person receiving position). And, to the extent Wilson could have expected AIM to promote her to BA III in 2016, when she had four years of experience in the BA II role, AIM's decision to hire Sriram as a BA III instead of giving the job to Wilson should have alerted her to her potential claim. *See* Doc. 74 ¶ 105; *see also Mears*, 831 F.2d at 1374. Under § 1981's four-year statute of limitations, Wilson had until late 2020 to file her claim related to this non-promotion. Because she did not file suit until April 12, 2021, the statute of limitations lapsed, and her claims are now time-barred to the extent they accrued before April 12, 2017. *See* 28 U.S.C. § 1658.

## II. Merits of Remaining Claims

The Court turns to assessing Wilson's surviving claims—her disparate compensation claims dating back to April 2017, and her claim that AIM failed to promote her in 2018. The parties frame their arguments under the burden-shifting framework, first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "which gives the plaintiff the initial burden to establish a *prima facie* case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual," *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). Though the *prima facie* case differs in each context depending on the harm Wilson alleges, at bottom, the "determinative question in discrimination cases is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action.'" *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

### A. Disparate Compensation

To succeed on her disparate compensation claims, Wilson must show that her race caused any pay discrepancies by pointing to evidence of, for example, comments or animus toward his protected group, suspicious timing, more favorable treatment of similarly situated employees, or pretextual reasons given for the pay disparity. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) ("We have identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment."). Wilson focuses on evidence of allegedly similarly situated non-Black employees who received higher salaries. But because there are significant differences between Wilson's experience and qualifications and those of her supposed comparators, and because Wilson cannot show that AIM's justification for the pay differences is pretextual, her claim fails.

### 1. Adverse Action

The Court first notes that Wilson has carried her burden of showing that she was paid less than two of her coworkers. AIM paid Wilson ($73,292.43) less than Louis ($75,000), who was the only other BA II under Opasinski's supervision at the time between April 2017 (when AIM hired Louis) and October 2017 (when AIM promoted Louis to BA III). Then, AIM paid Wilson ($74,758.32) less than Thomas ($80,000) from April 2019 (when AIM hired Thomas) until September 2019 (when AIM promoted Thomas to BA III, Doc. 81 ¶ 4.). Thus, Wilson can claim that she faced worse treatment than some of her colleagues. *See Hildebrandt v. Ill. Dept. of Nat.*

*Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003) (lower raises than some similarly situated colleagues satisfies *prima facie* case).

## 2. Similarly Situated Employees

However, no reasonable jury could find that Wilson was similarly situated to her chosen comparators, dooming her claim. "To prevail by showing a similarly situated employee was treated differently, a plaintiff must show the purported comparator was 'directly comparable to her in all material respects' so as to 'eliminate other possible explanatory variables.'" *Downing v. Abbott Lab'ys*, 48 F.4th 793, 805 (7th Cir. 2022) (quoting *Williams v. Off. of Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016)). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)). Wilson argues that Louis and Thomas are similarly situated comparators whose higher compensation proves that AIM discriminated against her with respect to pay. All three were BA IIs under Opasinski's supervision, but Louis' and Thomas' respective qualifications mean they are not proper comparators to substantiate Wilson's claim.

First, Wilson argues that AIM discriminated against her by paying Louis a $75,000 salary in April 2017 when Wilson was only earning $73,292.43 per year. But a brief examination of their divergent work experience and histories at AIM shows that Louis is not a proper comparator. *See Rucker v. Ill. Dep't of Child. & Fam. Servs.*, 326 F. App'x 397, 399 (7th Cir.

2009) (employees not comparable despite holding the same title and reporting to the same supervisor where, among other things, the comparator "had more relevant work experience"). Louis first began working for AIM in November 2016 as a *BA III* contractor, earning a salary of $77,000. The fact that Louis had experience at the BA III level means that she does not have comparable experience with Wilson, who had not yet had experience as a BA III in 2017. Moreover, AIM paid Louis $77,000 while she was a BA III contractor, meaning their full-time offer required Louis to take a pay *cut*. By contrast, Wilson only experienced increases in pay throughout her career at AIM—her salary as a BA II increased from $60,000 as a contractor, to $66,000 as a full-time, permanent employee, and eventually to $76,253.44 in 2020 before AIM promoted her to BA III. Further, Opasinski noted that Louis "demonstrated performance in the time that she was a contractor" as a BA III, which Opasinski said justified her salary. Doc. 74-12 at 151:20–21. Although Opasinski also noted that Louis needed to improve in some areas—such as technical skills including SQL scriptwriting and architectural experience—these do not mean that AIM was unjustified when it decided to compensate her more than Wilson in the BA II role. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004) (identifying work experience as a relevant consideration for disparate treatment). Thus, to the extent that Wilson complains that AIM should have paid her more for her work as a BA II, she cannot satisfy the requirement that this comparator be "directly comparable[.]" *Bio*, 424 F.3d at 597.

Second, Wilson points to Thomas' $80,000 starting salary in March 2019—when compared to her $74,758.27 salary at that time—as evidence that AIM discriminated against her with respect to compensation. But again, Thomas' qualifications significantly differ from Wilson's, meaning that she cannot ground her disparate compensation claim in his higher salary. *See id*. Although the Court lacks additional information about Thomas (such as his race, for

14

starters),[9] his educational credentials mean that Wilson cannot point to him as a proper comparator. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008) (holding that could not rely on a coworker's more favorable treatment when they were, *inter alia*, "not materially comparable in education [or] experience"); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (an employee was not similarly situated to the plaintiff where, among other things, he "had different qualifications and experience"). Thomas possesses two master's degrees from Christ University in Bangalore, India and Virginia Commonwealth University in Richmond, Virginia, and was in the process of obtaining a third advanced degree when he applied to work at AIM. Wilson does not have any post-graduate degrees or certifications. Moreover, Thomas had a continuous stretch of employment in business analyst positions or university attendance prior to AIM's decision to hire him. By contrast, AIM hired Wilson after she experienced two-and-a-half years of unemployment and had a contract position with AIM as a BA. These differences in education and experience mean that Wilson cannot point to Thomas as evidence of pay discrimination. *See id.*

Because Wilson cannot point to a similarly situated employee, her disparate compensation claim fails. *See Monroe*, 871 F.3d at 504.

### 3. Nondiscriminatory Justification

Wilson's claim also fails because she cannot show that AIM's proffered reason for any pay discrepancies is pretextual. "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, and so long as the employer honestly believes those reasons,

---

[9] Indeed, the fact that Thomas' race is unknown means that the Court cannot consider him a proper comparator for Wilson's claim. The plaintiff has the burden of establishing the elements of her *prima facie* case. *See Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F.3d 866, 880 (7th Cir. 2016); *see also Dandy*, 338 F.3d at 274 (denying disparate compensation claim when plaintiff failed to establish necessary details about alleged comparators). Because Wilson failed to establish that Thomas is not Black, she has not carried this burden.

pretext has not been shown." *Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (citation

omitted). Wilson can "demonstrate pretext directly by showing that 'a discriminatory reason

more likely motivated' [the pay disparity], or indirectly by showing that [AIM's] explanations

are 'unworthy of credence.'" *Senske v. Sybase*, 588 F.3d 501, 507 (7th Cir. 2009) (citation

omitted). In determining whether an employer's explanation is honest, courts look to the

reasonableness, not the accuracy, of the explanation. *Duncan v. Fleetwood Motor Homes of Ind.,

Inc.*, 518 F.3d 486, 492 (7th Cir. 2008).

      The undisputed facts show that AIM sets its salary ranges according to objective, market-

based research. Although managers can advocate for new hires to receive salaries toward the

high end of the set ranges based on a candidate's experience and salary expectations—and both

of the comparators discussed above had credentials superior to Wilson's—AIM's human

resources department has the final say. Based on AIM's market research, the company

determined that Wilson's salary of $74,758.27 in 2018 represented 100% of the midpoint salary

range, indicating she was receiving the appropriate market value for her labor. Further, once

Wilson became a full-time employee, AIM did not guarantee her annual salary increases of any

amount, based on her merit or tenure. Although Opasinski had the discretion to adjust the

amount of raises and bonuses to Wilson and the other BA IIs under her management, AIM policy

required Opasinski to give at least *a* pay increase when it determined Wilson deserved one and

Opasinski's supervisors reviewed and ratified her final determinations. Under this system, AIM

gave Wilson merit raises every year during her time as a BA II from 1.1% to 3%, steadily

increasing her salary from $66,000 in 2012 to $76,253.44 in 2020 before her promotion to BA

III. These facts paint a picture of how AIM made its compensation decisions in a reasonable

manner, even if Wilson was dissatisfied with the results. *See Duncan*, 518 F.3d at 492.

16

Although Wilson claims that AIM's explanation does not actually show "why AIM hired and/or promoted Wilson's less-experienced, non-African American comparators at rates similar to and/or higher than what Wilson was earning," Doc. 77 at 15, that is not the hurdle that AIM must clear. Nor is the inquiry whether AIM can provide an explanation that leaves Wilson completely satisfied, or even if the explanation is "accurate, wise or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). Rather, the question is simply whether AIM's explanation is reasonable. *See Duncan*, 518 F.3d at 492. It is.

Wilson cannot show that AIM treated her worse than similarly-situated colleagues, nor can she demonstrate that AIM's stated reason for its compensation decisions is mere pretext for discrimination. Without any such evidence, a jury could not conclude that Wilson's race alone—rather than her qualifications—was the source of the compensation differences. *See Ortiz*, 834 F.3d at 765. The Court therefore grants AIM summary judgment on Wilson's disparate compensation claims.

###### B.  Failure to Promote

Wilson's only viable failure to promote claim relates to her non-promotion to the Business Consultant role in 2018. To succeed on this claim, Wilson can show that (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position, *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016), or that her "'race . . . caused the . . . adverse employment action,'" *Igasaki*, 988 F.3d at 958 (quoting *Ortiz*, 834 F.3d at 765). If Wilson makes such a showing, then AIM can argue that it had a legitimate reason for not promoting her, which Wilson may rebut. *Langfelder*, 52 F.4th at 353.

17

AIM argues that Wilson's *prima facie* case fails because she never actively sought a promotion to Business Consultant and AIM thus never denied her a promotion. AIM also justifies its promotion decisions by claiming that the employees it promoted to the Business Consultant role were better qualified for the position than she was. AIM further argues that, even if Wilson satisfies her *prima facie* case, it had legitimate, non-discriminatory reasons for not promoting her to the Business Consultant role that do not provide pretextual cover for race discrimination. Wilson, in response, claims that she satisfies her *prima facie* case and that AIM's proffered reasons for failing to promote her are mere pretext. But because Wilson cannot show that she demonstrated an interest in the Business Consultant role (or any other promotion), and because she fails to show that AIM's stated reason for not promoting her is pretextual cover for racial animus, the Court grants AIM summary judgment on this claim.

### 1. AIM's Promotion Practices

AIM promotes its employees through an internal process, which may or may not involve employees affirmatively discussing their promotion prospects with their managers. When an employer "does not solicit and await applications but hands out promotions on its own initiative in a nonselective, serial fashion," a plaintiff only needs to show "that the employer's decision not to approach people of her status was itself illegitimately motivated and [show] that but for such a practice she likely would have been approached," and that she would have taken the job if offered it. *Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994). This is because it would not make sense to hold an employee responsible for not applying to openings that do not officially exist, or not seeking out promotions that managers bestow on their employees. However, even though this Court must draw all reasonable inferences in Wilson's favor, she must "do more than

show she had a general interest in obtaining some job other than the one she had." *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985).

The Seventh Circuit's holding in *Box*, which both Wilson and AIM cite in support of their respective claims, compels the Court to grant AIM summary judgment on Wilson's failure to promote claim. In *Box*, the defendant had a promotion structure similar to AIM's where management promoted employees without formal applications. *Id.* at 1376–77. The court acknowledged that this diminished the plaintiff's requirement to show that she had applied for a job, but it noted that she must still show that "she would have applied" for an opening if one existed. *Id.* at 1377. But because the record included only three statements that "len[t] any support to [the plaintiff's] claim" that she would have applied for a promotion, and those statements only demonstrated "a vague interest in the [promotion]" rather than a serious intent to obtain one, the court affirmed summary judgment for the employer. *Id.*

Here, there are hardly two vague statements in the record that support Wilson's subjective claim that she sought a promotion. First, Wilson testified that she spoke with Hess in "2012 and a piece of early 2013" about her career progression. Doc. 74-15 at 122:15. Given that AIM only hired Wilson as a permanent employee at the end of August 2012, it defies credulity to think that these early conversations evinced an interest in a promotion two levels above the position she held at the time, or that she put herself forward for a promotion more than six years in advance. Second, Wilson further testified that she had a singular conversation with Opasinski in 2016 or 2017 about becoming a "strategy officer," Doc. 74-15 at 142:4–22, which is not a BA group position. This conversation only shows that she wanted a "job other than the one she had." *Box*, 772 F.2d at 1377. It does not show an interest in being promoted to a

position two levels above the BA II role she held in 2016 and 2017 that would allow a reasonable jury to find in her favor.

*Elguindy v. Commonwealth Edison Co.*, which distinguishes *Box*, helps illustrate why Wilson's failure to promote claim fails. 903 F. Supp. 1260 (N.D. Ill. 1995). In *Elguindy*, the defendant did not tell employees that they were under consideration for a promotion, nor did it inform them when promotions became available. *Id.* at 1267. By "express[ing] her desire to be promoted to her supervisors both orally and in writing" and by "request[ing] that she be enrolled in courses teaching managerial and supervisory skills," the court found the plaintiff's actions "[u]nlike the plaintiff's vague statements in *Box*" and determined that her claim survived summary judgment. *Id.* Here, Wilson's conversation with Hess in her salad days as an AIM employee and discussion with Opasinski about a job opening outside the BA promotion track would not allow a jury to infer that Wilson would have applied for a Business Consultant position if one were available. *See Box*, 772 F.2d at 1377.

Because Wilson cannot show that she would have accepted the Business Consultant position if AIM offered it to her, *see Loyd*, 25 F.3d at 523, her *prima facie* case fails.

## 2. Less Qualified Employee and Pretextual Justification

The Court further finds that Wilson failed to establish that AIM promoted a less qualified, non-Black employee and that AIM's reason for not promoting her—namely that her peers performed better than she did—is mere pretext for racial animus.[10] *See Langfelder*, 52 F.4th at 353. Wilson challenges the propriety of AIM promoting Louis to the Business Consultant role in 2018, claiming that a jury must resolve disputes of fact that would determine whether Louis was less qualified than Wilson for the promotion. But, as discussed above, Louis

---

[10] The Court addresses these elements together because, in Wilson's words, "these issues are intertwined." Doc. 77 at 10 n.6 (citing *Currie v. Paper Converting Mach. Co.*, 202 F. App'x 120, 122 (7th Cir. 2006)).

is not a similarly situated employee. The fact that she had prior work experience as a BA III—indeed, the fact that Louis was working as a BA III at the time she received her promotion to Business Consultant while Wilson was still working as a BA II—sets them apart. *See Wyninger*, 361 F.3d at 979. Thus, Wilson's *prima facie* case fails again on the fourth prong, and further means that she cannot rebut AIM's stated reason for declining to promote her. *See Henderson*, 207 F.3d at 378 ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

To sum up, Wilson cannot show that she would have accepted a promotion if offered one, that AIM treated her less favorably than a similarly situated colleague, and that AIM's stated justification for not promoting her is pretext for race discrimination. A jury, therefore, could not conclude that Wilson did not receive a promotion solely due to her race. *See Ortiz*, 834 F.3d at 765. The Court grants AIM summary judgment on Wilson's failure to promote claim.

## CONCLUSION

For the foregoing reasons, the Court grants AIM's motion for summary judgment [72]. The Court enters judgment for AIM on Wilson's complaint and terminates the case.


Dated: December 4, 2023

_____
SARA L. ELLIS
United States District Judge